In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-2156

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

HIRAM OMAR GRAHAM,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 17-CR-220 — **J.P. Stadtmueller**, *Judge.*

ARGUED JANUARY 23, 2019 — DECIDED FEBRUARY 8, 2019

Before WOOD, *Chief Judge*, and KANNE and ST. EVE, *Circuit Judges.*

PER CURIAM. Hiram Graham pleaded guilty to Hobbs Act robbery and using a firearm during a crime of violence. At sentencing, he argued that his financial hardships, his extraordinary family situation, and his lack of a criminal record should mitigate his sentence. He now contends that the district court failed to address these arguments or adequately explain his 144-month, below-guidelines prison sentence. But

the district court did not commit these procedural errors, so we affirm the judgment.

## I. BACKGROUND

Over a five-month period, Graham robbed six Aldi grocery stores at gunpoint. He had worked at an Aldi in Milwaukee for six years, before he was fired four months before the first robbery for stealing food. Graham targeted Aldi stores because of his insider knowledge, including his knowledge that Aldi trains employees to acquiesce to robbers. Graham would enter a store a few minutes before closing, hide until it closed, then approach employees with his gun drawn and instruct them to empty the safe. Two weeks after the sixth robbery, Graham was arrested, and he later confessed.

Graham pleaded guilty to six counts of Hobbs Act robbery, 18 U.S.C. § 1951(a), and one count of using a firearm during of a crime of violence, 18 U.S.C. § 924(c)(1)(A)(ii). In calculating the applicable imprisonment range under the Sentencing Guidelines, the district court found that Graham had a total offense level of 28 and criminal history category of I, giving him a range of 78 to 97 months for each robbery, followed by a mandatory consecutive sentence of 84 months for the § 924(c) conviction. *See* 18 U.S.C. § 924(c)(1)(D)(ii) (mandating that sentence for 924(c) conviction be imposed consecutively). Consistent with Graham's plea agreement, the government recommended a within-guidelines sentence.

At sentencing, Graham argued that he should receive the "least restrictive sentence available"—just 84 months' imprisonment for the § 924(c) conviction and no additional time—because his case was unique. For thirty years, Graham had been a productive member of society, graduating high school

and working two full-time jobs to support his girlfriend and six children. Counsel recounted that Graham had lived a crime-free life until the financial pressures of six children, one with serious medical issues, overwhelmed him and drove him to use drugs, steal food, and, finally, rob his former employer under the influence of cocaine. Counsel stressed that Graham had learned his lesson, was statistically "unlikely to reoffend," and that, because of his family support, there was every reason to believe that he would be rehabilitated.

Before hearing the parties' arguments, the district court stated that it had reviewed Graham's twelve-page sentencing memorandum and other submissions. And after hearing all the arguments, the court commented that it understood that Graham, "like so many," had been "confronted with financial challenges," which "may serve as an explanation for" his conduct. But, the court continued, this did "not provide a meaningful excuse for anyone to take matters into their own hands and go about taking from others." Graham's criminal conduct, the court emphasized, had not been "spur of the moment," but "well-planned, executed such that it took law enforcement" additional time to discover who the perpetrator was, and that there was "too much in the way of criminal conduct" to justify the sentence Graham requested.

Next, the district court discussed at some length the exorbitant costs of incarceration and the ballooning prison population. It explained that "this branch of the court and others are beginning to factor into their analysis of the cost benefit to society" this issue in deciding "how much is enough."

The court then determined that, considering "uniformity, proportionality, certainty, and cost," concurrent sentences of 60 months' imprisonment for each robbery was appropriate,

followed by the mandatory consecutive sentence of 84 months for the firearm conviction, for a total sentence of 144 months. The sentence was justified, the court concluded, by the "totality of the facts and circumstances" underlying the six robberies.

## II. ANALYSIS

We review claimed procedural errors de novo. *See United States v. Lockwood*, 840 F.3d 896, 900 (7th Cir. 2016). Graham first argues that the district court procedurally erred when it failed to address his mitigation arguments and adequately explain its consideration of them. At sentencing, a court must address the parties' principal arguments, and "where a defendant's principal argument is not so weak as not to merit discussion, the court must explain its reason for rejecting that argument." *United States v. Reed*, 859 F.3d 468, 472 (7th Cir. 2017) (internal quotation marks omitted).

As to the primary factor concerning the sentence imposed, we turn first to Graham's claim of financial hardship. Although the district court did not say much about how this mitigation argument influenced its sentence, its remarks demonstrate that it was unpersuaded that Graham's severe and escalating financial troubles outweighed the aggravating circumstances of his six robberies. The court acknowledged Graham's financial challenges but responded that they did not offer an excuse for armed robbery. Graham maintains that this statement alone was insufficient, but a "short explanation" for rejecting a mitigating argument "will suffice where the context and record make clear the reasoning underlying the district court's conclusion." *United States v. Schroeder*, 536 F.3d 746, 755 (7th Cir. 2008) (citing *Rita v. United States*, 551 U.S.

338, 358–59 (2007)); *see United States v. Castaldi*, 743 F.3d 589, 595 (7th Cir. 2014).

Here, directly after mentioning Graham's financial hardship, the court noted that the robberies were "not spur of the moment," but "well-planned," and involved conduct too egregious—"heinous" and "contrary to every moral precept"—to allow it to sentence him as leniently as his counsel had advocated.

As to the other mitigating factors Graham raised—his lack of a criminal record, strong family ties, and drug use—he is correct; the district court did not discuss them. And a court that fails to mention a ground of recognized legal merit likely errs. *United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005). But the requirement that a court specifically address the defendant's principal arguments "applies with less force" where it receives written and oral sentencing arguments and imposes a prison sentence "significantly below the applicable guidelines range." *United States v. Poetz*, 582 F.3d 835, 837 (7th Cir. 2009). And a court's statement that it has read the defendant's submissions is often "enough to satisfy us that [it has] considered the argument and rejected it." *United States v. Ramirez-Gutierrez*, 503 F.3d 643, 646 (7th Cir. 2007). That is what happened here: the district court stated that it had reviewed Graham's submissions and heard oral argument before explaining its below-guidelines sentence. Besides, the obligation to address mitigating arguments decreases when a defendant presents "stock arguments … about his family situation and lack of criminal history," as Graham did. *United States v. Martinez*, 520 F.3d 749, 753 (7th Cir. 2008) (internal quotation marks and alterations omitted). These "are precisely the types of routine contentions that a sentencing court

is certainly free to reject without discussion." *Id.* (internal quotation marks omitted).

Graham also faults the district court for failing to address his extraordinary family circumstances as a father and provider for six children, one with medical issues. He points to cases in which we remanded because the district court did not discuss a defendant's unusual family situation. True enough, a defendant's family circumstances may be a legitimate basis for a below-guidelines sentence if the district court finds "that a defendant's family ties and responsibilities … are so unusual that they may be characterized as extraordinary." *Schroeder*, 536 F.3d at 755–56 (alteration in original and citations omitted). But Graham did not argue that his incarceration would leave his children in imminent danger or completely without care—he argued that the financial strain on the family would only increase if he was incarcerated. *See id.* at 750–51, 756 (defendant was primary caregiver for daughter whose significant medical problems made daycare unsafe and defendant's absence would make arranging care impossible). Sadly, as we have observed: "Most families suffer emotional and financial harm when a parent is imprisoned. Any experienced district judge has heard about those effects many times and must recognize that those effects are consequences of the parent's crime, not the sentence imposed." *United States v. Gary*, 613 F.3d 706, 710 (7th Cir. 2010). Graham's contention that his large family would lose its main breadwinner and that his children would suffer from their father's absence, was not extraordinary enough to warrant specific discussion. *See Martinez*, 520 F.3d at 753. Moreover, the focus of Graham's argument about his family was how the financial pressures of providing for them led Graham to commit these crimes, and the court addressed that mitigating argument.

Next, Graham says that the court improperly focused on the costs of incarceration to the exclusion of his substantial mitigating arguments, and therefore failed to adequately explain the sentence. But even with this incidental policy discussion, the district court did address Graham's strongest mitigating argument (financial hardship) and explained that it was imposing 60 months for each armed robbery to account for the egregiousness of Graham's criminal conduct. That is enough "to allow for meaningful appellate review and to promote the perception of fair sentencing." *Gall v. United States*, 552 U.S. 38, 590 (2007); *see also United States v. Washington*, 739 F.3d 1080, 1081 (7th Cir. 2014).

And the court's discussion about incarceration costs, although not explicitly mentioned in 18 U.S.C. § 3553(a), played into its "analysis of the cost benefit to society, [and] the benefit to the inmate." *See United States v. DuPriest*, 794 F.3d 881, 884 (7th Cir. 2015) (noting that same district judge's commentary on prison costs was proper in the context of discussing § 3553(a) sentencing factors). In any event, the court *reduced* the sentence because of its views on the costs of incarceration, so Graham arguably benefited from the court raising a mitigating argument it found more persuasive.

### III. CONCLUSION

The district court reviewed the § 3553(a) factors, addressed Graham's primary mitigation argument, and stressed the aggravating fact that Graham had committed *six* robberies. This explanation allows for deferential appellate review, and thus we affirm the judgment.