NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 14, 2019
Decided November 25, 2019

**Before**

DANIEL A. MANION, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 19-1998

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 18-CR-220-JPS |
| JABRI J. GRIFFIN, *Defendant-Appellant.* | J.P. Stadtmueller, *Judge.* |

**O R D E R**

Jabri Griffin was charged with and pleaded guilty to possessing a firearm as a felon. The district court sentenced him to 42 months' imprisonment, below the Sentencing Guidelines range of 70 to 87 months. Griffin now appeals his sentence, arguing that it reflects the district court's unfounded speculation that he was engaged in additional criminal activity. He also contends that the court failed to consider a principal mitigation argument. But Griffin forfeited his argument about the speculative statement, and he cannot demonstrate that the district court plainly erred. Further, the

district court adequately considered Griffin's arguments in mitigation. We therefore affirm the judgment.

## I. BACKGROUND

In the fall of 2018, police officers responded to a 911 call that two men were arguing and that one had a gun. When the officers arrived, they found Griffin arguing with his cousin in the backyard of his cousin's home. The officers saw a gun sticking out of Griffin's pocket. When they took the gun and searched Griffin, they discovered that he was also carrying $1,887 in cash.

Having been convicted of felony drug offenses previously, Griffin could not legally possess the firearm, so he was arrested and charged. After he pleaded guilty, a probation officer prepared a presentence investigation report. The report calculated Griffin's offense level to be 23, with a criminal history category of IV, resulting in a guidelines range of 70 to 87 months' imprisonment.

At the sentencing hearing, the district court first asked Griffin whether he had any objections to the presentence investigation report. Griffin did not, so the court accepted the facts in the report and adopted the proposed guidelines range. Next, Griffin presented his argument for a prison sentence of only 28 months. He emphasized that he had purchased the gun to protect himself after he received threats, and that he had no intention of using the gun to commit a crime. He also noted that, despite multiple arrests, he had been sentenced only once before, and that his personal history—growing up in poverty and being exposed to drugs and violence at a young age—warranted a lesser sentence. Finally, he asked the court to consider his conduct since being arrested: he had actively participated in counseling and programming to better himself as a person, father, and employee.

After Griffin's allocution, the district court observed that despite Griffin's multiple contacts with the criminal justice system, he had learned "precious little in terms of respect for the law." In addition to his previous drug convictions, the court noted, Griffin had been charged in state court with three counts of being a felon in possession. (Those charges were dismissed, and the court stated that it was not considering that conduct as a basis for Griffin's sentence.) The court then mentioned that associating with the "wrong crowd" and being unemployed leads to violence and results in incarceration. "In fact," the court continued, Griffin had been arrested with about $2,000 in cash in his pocket, and "[n]obody carries that amount of money around

in cash, unless they're up to something no good, whether it's drugs or gambling or theft or whatever." The court did not acknowledge that Griffin was working cash jobs at the time for his friends and family and earned up to $2,000 per month.

The court continued by commenting that unless Griffin made some changes in his life, including getting an education and obtaining a regular job, he was going to find himself back in prison. The court then stated that although Griffin "may have today aspirations and goals to put all of this behind [him] in terms of a lifestyle," it could not predict whether he would truly reform his behavior. But, the court emphasized, it routinely considered the cost of incarceration when determining a just and reasonable term of imprisonment, as sentencing had "reached a point … where the law of diminishing returns begins to be part of the equation." After discussing Griffin's relatively modest criminal history and goals to improve himself, the court sentenced him to 42 months' imprisonment, 28 months below the guidelines range. Finally, the court asked Griffin's counsel whether any other matters needed to be addressed, and counsel responded no.

## II. ANALYSIS

### A. The District Court's Remarks about Griffin's Cash

On appeal, Griffin first argues that the district court erred by commenting on the nearly $2,000 in his pocket at the time of his arrest and speculating that "nobody carries that amount of money around in cash, unless they're up to something no good." Griffin contends this statement lacks any support and contravenes the evidence that he worked cash jobs, resulting in a sentence that violated his "due-process right to be sentenced based on accurate information." *United States v. Miller*, 900 F.3d 509, 513 (7th Cir. 2018).

### 1. Standard of Review

The parties dispute which standard of review applies to this argument. The government contends that Griffin did not object to the district court's statement during sentencing, so the issue is forfeited and subject to plain-error review on appeal. Griffin responds that he did not need to respond to the district court's comment after it had already been made because "[e]xceptions to rulings or orders of the court are unnecessary." FED. R. CRIM. P. 51(a). He argues that he preserved his sentencing-related arguments because he argued for a lesser sentence and gave his reasons for it.

But the two cases that Griffin relies on in support of his argument are distinguishable. First, in *United States v. Bartlett*, 567 F.3d 901, 910 (7th Cir. 2009), we held that the defendant did not have to challenge the above-guidelines sentence announced by the district court because the sentence had been "the subject of extensive argument and evidence" before the court imposed it. And "when an issue is argued before the judicial ruling, counsel need not take exception once the court's decision has been announced." *Id.* But here, the errant, speculative comment that the court made during sentencing was not "a judicial choice" on a contested issue. So, Griffin's argument for a lower sentence was not sufficient to alert the court to a potential error. Second, in *United States v. Courtland*, 642 F.3d 545, 551 (7th Cir. 2011), the district court entered its own research memorandum on the docket and referred to it during the sentencing hearing as an "order." When the defendants challenged the propriety of the document on appeal, we concluded that they had not forfeited their arguments because it was unclear whether they were put on notice of the district court's "order," and when "a party does not have an opportunity to object to a ruling or order, the absence of an objection does not later prejudice that party." *Id.* (quoting FED. R. CRIM. P. 51(b)). *Courtland* turned largely on the "unusual circumstances" of the district court's "order," *see id.*, which is not a factor present in Griffin's case.

Instead, this case is more like *United States v. Oliver*, 873 F.3d 601, 607 (7th Cir. 2017), and *United States v. Bostock*, 910 F.3d 348 (7th Cir. 2018). In *Oliver*, after both parties had the opportunity to speak, the district court made speculative, off-the-cuff remarks. 873 F.3d at 606. Then, after announcing the sentence, the district court asked defense counsel whether there was "any argument of yours as to the sentence that [the court had not] addressed." *Id.* Because the defendant responded that there was not, and did not otherwise object to the court's comments, we concluded that the defendant had forfeited any objection to those remarks on appeal. *Id.* at 607. Similarly, in *Bostock*, the district court stated, without support, that methamphetamine in the form of "ice" is more valuable and that "with 'more value comes more danger.'" 910 F.3d at 350. Because the defendant did not dispute the district court's observations, we concluded, he forfeited the argument that the district court improperly relied on unsupported premises in crafting the sentence. *Id.* at 350–51; *see also United States v. Spivey*, 926 F.3d 382, 385 (7th Cir. 2019) (concluding that defendant forfeited argument that district court improperly relied on violation of non-existent supervised-release condition because defendant did not object to alleged procedural error); *Miller*, 900 F.3d at 512 (ruling that, by failing to object, defendant forfeited argument about district court's erroneous statement that defendant's criminal history would place him in category VIII if it existed).

We agree with the government that Griffin forfeited his argument. The district court's speculative statement about the money in Griffin's pocket was not a Rule 51 "ruling or order." True, there was no evidence that Griffin was engaged in gambling or theft when he was arrested with nearly $2,000 in cash. But the record also does not reveal why Griffin had that much money in his pocket—the presentence investigation report indicates that around the time of his arrest, Griffin was working cash jobs and earned about $2,000 *per month*. And the court did not reach a "judicial choice" on a contested issue, *see Bartlett*, 567 F.3d at 910; it merely commented on the suspicious nature of carrying $2,000 in cash. Had Griffin objected to this opinion, he could have explained why the money was in his pocket, giving the district court the opportunity to correct, clarify, or withdraw the remark. *Cf. Bostock*, 910 F.3d at 350 (noting that, had defendant objected, a record could have been made supporting or disproving district court's speculative statement). Griffin therefore forfeited his argument, and it is subject to plain-error review.

2. *The Merits Under Plain-Error Review*

Assuming that the court's speculation constitutes an inaccurate statement, Griffin must demonstrate that the district court's misstatement affected his substantial rights—"that there is a reasonable probability that, but for this error, his sentence would have been different." *Miller*, 900 F.3d at 512; *accord Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904–05 (2018). But Griffin has not established that he was prejudiced. The district court supported the sentence by pointing to factors other than the amount of cash Griffin was carrying. *See Miller*, 900 F.3d at 513. It detailed Griffin's criminal history and multiple contacts with the criminal justice system. It then addressed the circumstances of the offense—including that Griffin had not actually fired the weapon he possessed—and noted that the high-powered firearm was a "recipe for disaster." The court next commented that Griffin's prior convictions did not seem to deter him from engaging in criminal activity. And although the court considered Griffin's arguments that he was reforming himself through counseling and training, it found that Griffin's hope for a brighter future did not offset his criminal history. Based on these factors, the court sentenced Griffin to 42 months' imprisonment. Because the district court cited multiple reasons to support the sentence other than the amount of cash found in Griffin's pocket, *see id.*; *Bostock*, 910 F.3d at 351, Griffin cannot demonstrate a reasonable probability that his sentence would have been different absent the court's speculation.

   *B.  The District Court Adequately Addressed Griffin's Mitigation Arguments*

   Finally, Griffin contends that the district court erred by failing to consider his post-offense rehabilitation. Although the district court must address a defendant's meritorious argument in mitigation, that consideration need not be exhaustive, and less explanation is needed when the court imposes a within- or below-guidelines sentence. *See United States v. Graham*, 915 F.3d 456, 459 (7th Cir. 2019); *United States v. Curby*, 595 F.3d 794, 797 (7th Cir. 2010). In fact, a court's statement that it has reviewed the written argument can suffice to demonstrate that it considered the argument and rejected it. *See Graham*, 915 F.3d at 459. The district court here not only made such a statement, but also discussed Griffin's post-offense rehabilitation and afforded it little weight, stating that while Griffin may have "aspirations and goals to put all of this behind [him]," the court could not "be so clairvoyant as to predict what lies ahead." All the court could do, it continued, was judge "based upon the record [that was] before [it]." Although the discussion may have been brief, it demonstrates that the court considered Griffin's mitigation argument and used a reasoned basis for affording it little weight. *See, e.g.*, *United States v. Davis*, 764 F.3d 690, 694 (7th Cir. 2014); *United States v. Stinefast*, 724 F.3d 925, 931–32 (7th Cir. 2013).

   We therefore affirm the sentence imposed by the district court.