In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-3873

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOSHUA VIDAL,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 10 CR 618-1—**Amy J. St. Eve**, *Judge.*

ARGUED DECEMBER 12, 2012—DECIDED JANUARY 31, 2013

Before POSNER, ROVNER, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* Joshua Vidal was a member of a gang that was active in the cocaine business. He made the mistake of working with an undercover FBI officer in a scheme to rob a "stash house." In time, he was charged with and pleaded guilty to four counts related to that planned crime. This appeal concerns only his sentence, which was within the range recommended by the Sentencing Guidelines. The district court erred, he

asserts, by failing adequately to consider his primary argument under 18 U.S.C. § 3553(a)—his psychiatric history. Although we recognize that the district court may yet come to the same conclusion after taking a closer look at this argument and providing an explanation that is sufficient for appellate review, it is also possible that it may not. We cannot base our review on speculation. We thus remand for further proceedings.

**I**

Vidal, a member of the Two-Six street gang, was arrested in July 2010 after an FBI informant recruited him to rob a cocaine stash house. Vidal took the lead in planning the robbery, assembling a team of four coconspirators and assuring the undercover FBI officer that he had completed similar robberies in the past and could easily sell all of the cocaine that the crew expected to recover. On the day of the planned robbery, Vidal and his crew assembled in a parking lot with three loaded pistols and a roll of packing tape. They were arrested as they left the parking lot.

Vidal was eventually charged with, and pleaded guilty to, the following four counts: (1) conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846; (2) attempt to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846; (3) a Hobbs Act violation committed by attempting to rob the house and steal the cocaine and cocaine proceeds, see 18 U.S.C. § 1951(a); and (4) possession of a firearm in furtherance

of a crime of violence and drug trafficking crime, prohibited by 18 U.S.C. § 924(c)(1)(A).

The probation officer who prepared the presentence report (PSR) calculated an offense level of 35, based on the 30 kilograms of cocaine that Vidal believed were involved in the conspiracy (the amount to be used in the sting was apparently selected by the FBI agent), see U.S.S.G. § 2D1.1(a)(5), a four-point upward adjustment for his leadership role in the offense, see *id*. § 3B1.1(a), and a three-point reduction for his timely plea and acceptance of responsibility, see *id*. § 3E1.1. Combined with Vidal's category III criminal history, this offense level yielded an advisory sentence of 210 to 262 months' imprisonment on counts I through III. The PSR also noted that Vidal had a history of mental illness and had previously received counseling for bipolar disorder and depression, but that he had declined to continue treatment for either disorder.

Vidal did not object to the PSR, but he sought a 180-month sentence (the mandatory minimum), which he argued was warranted by his difficult childhood and psychological problems. Dr. Susan Pearlson, a forensic psychiatrist, evaluated Vidal before sentencing and diagnosed him with posttraumatic stress disorder, bipolar spectrum disorder, claustrophobia, and drug and alcohol abuse. Dr. Pearlson opined that these disorders impaired Vidal's ability to make rational decisions. While Vidal was being evaluated by Dr. Pearlson, he took his prescribed medications and felt more peaceful. Dr. Pearlson stated that "the combination of sobriety

and psychotropic medication over an extended period of time and the absence of an antisocial personality disorder" placed Vidal at a lower likelihood of reoffending upon his release from prison.

The district court adopted the probation officer's guidelines calculations and sentenced Vidal to concurrent terms of 210 months on counts I through III, and a consecutive term of 60 months on count IV (the mandatory minimum for that offense). The court discussed Vidal's behavior extensively, but all it had to say about his psychological problems was this: "I also note the mental health issues that you appear to struggle with. Certainly your drug abuse problem does not go well with your mental health issues." Otherwise, the court emphasized Vidal's lengthy criminal record, his history of violence, and the fact that he apparently had been undeterred by the time he already had spent in jail.

## II

On appeal, Vidal argues only that the district court erred by failing adequately to consider his argument that his psychiatric issues warranted a below-guidelines sentence. At sentencing, Vidal had highlighted Dr. Pearlson's view that the combination of enforced sobriety, psychotropic medication, and the absence of antisocial personality disorder indicated a decreased likelihood that he would reoffend upon his release from prison. The district court made no reference to any of this in its fleeting comment about Vidal's "mental health issues," and thus, he argues, there is no way to know

whether the court adequately considered this ground of mitigation.

A sentencing judge must address a defendant's principal arguments in mitigation. See *United States v. Chapman*, 694 F.3d 908, 913-14 (7th Cir. 2012). Even so, "the judge's failure to discuss an immaterial or insubstantial dispute relating to the proper sentence would be at worst a harmless error." *United States v. Cunningham,* 429 F.3d 673, 679 (7th Cir. 2005). Although the district court "need not raise every conceivable issue on its own initiative, . . . the court must acknowledge and respond to any properly presented sentencing argument which has colorable legal merit and a factual basis." *United States v. Begin,* 696 F.3d 405, 411 (3d Cir. 2012). In *United States v. Miranda,* 505 F.3d 785 (7th Cir. 2007), this court applied that principle when it remanded for resentencing in a case where the district court had not addressed the defendant's mental-illness argument. *Id.* at 792. We have required resentencing both when the district court is silent about the defendant's principal argument in mitigation, see *United States v. Robertson*, 662 F.3d 871, 879-80 (7th Cir. 2011); *United States v. Villegas-Miranda*, 579 F.3d 798, 801 (7th Cir. 2009); *Cunningham*, 429 F.3d at 679, and when the district court's discussion is so cursory that we are unable to discern the court's reasons for rejecting the argument, see *United States v. Schroeder*, 536 F.3d 746, 755-56 (7th Cir. 2008); *Miranda*, 505 F.3d at 792.

The only question here is on what side of the line the district court's statement falls. Although it acknowl-

edged that Vidal had mental-health issues, its statement gives us no insight into the judge's evaluation of that condition. Indeed, one could infer simply from the participation of Dr. Pearlson, a forensic psychiatrist, that the court was aware that mental illness might need to be considered. But more than that is needed: The mention of a word is not the same thing as a discussion or an explanation. Particularly because Dr. Pearlson's report went beyond describing Vidal's mental disorders and predicted that he is less likely than the average person to recidivate, there was a need for the district court to explain why it thought that the latter point did not justify a lighter sentence. In short, this is not a case in which the record makes clear the court's reasons for rejecting the proffered argument, see *Rita v. United States*, 551 U.S. 338, 357-58 (2007); *Schroeder*, 536 F.3d at 755; *Miranda*, 505 F.3d at 792.

It would also have been helpful for the court to explain why Vidal's particular mental-health history did not temper some of the court's (valid) concerns with specific and general deterrence. Vidal grew up in a violent, drug-infested environment, bouncing between his mother and his grandmother. At times he witnessed his mother being beaten, and at times he was subject to violent abuse himself. His alcoholic stepfather beat him regularly and threatened him with death. When he was 14, he was beaten up by a rival gang member, and in 2001 he attempted to commit suicide by overdosing on Tylenol. His mother found him in time, he was taken to a hospital, and ultimately admitted to an inpatient mental-health facility, where he was diagnosed

with depression and prescribed medication. He stayed there only a week, however. He has attempted suicide on two additional occasions, once in 2003 and once in 2008. He has also experienced racing thoughts, mood instability, an inability to concentrate, and similar symptoms. He hears voices, has claustrophobia, and sees things on the wall move.

Records from the various institutions and mental-health professionals who have treated Vidal were available to Dr. Pearlson and to the court. The court had also been told about his positive response to treatment. Vidal's argument in mitigation was thus a serious and well-documented one that required the court's specific attention.

Vidal's sentence is therefore VACATED and the case is REMANDED to the district court for further proceedings consistent with this opinion.