In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 17-3325

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ABDELLA AHMAD TOUNISI,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division
No. 13 CR 328-1 — **Samuel Der-Yeghiayan**, *Judge.*

———————————

ARGUED AUGUST 7, 2018 — DECIDED AUGUST 21, 2018

———————————

Before KANNE, SCUDDER, and ST. EVE, *Circuit Judges.*

PER CURIAM. Federal agents thwarted Abdella Tounisi's plans to travel to Syria to join Jabhat al-Nusrah, a militant terrorist group associated with al-Qaida, when they arrested him at an airport gate while awaiting a flight to Turkey. He pleaded guilty to knowingly attempting to provide material support to a foreign terrorist organization, and the district court sentenced him to the statutory maximum of 15 years in prison and a lifetime of supervised release. Tounisi argues on

appeal that the district judge procedurally erred at sentencing in four ways: (1) he did not sufficiently address Tounisi's mitigating arguments; (2) he did not adequately explain the length of imprisonment; (3) he failed to properly consider the 18 U.S.C. § 3553(a) factors; and (4) he did not adequately explain the length of supervised release. Because the judge did not make any of these errors, we affirm the judgment.

## I.  Background

By early 2013, Tounisi had decided to join Jabhat al-Nusrah in Syria. He had watched videos of and read articles about its violent operations and its links to al-Qaida. His parents learned of his plans and attempted to stop him by taking away his passport in January. Undeterred, Tounisi applied for an expedited passport, reporting that his previous one had been lost and that he intended to travel to Jordan. He also opened a post-office mailbox just to receive the new passport. Later that month he visited a purported recruitment website for Jabhat al-Nusrah and emailed the listed contact person, who was actually an FBI agent, about his strategy to travel to Syria by flying to Istanbul, Turkey, then bussing to Gaziantep, a Turkish city bordering Syria. He explained that he would seize the opportunity to attain martyrdom if it presented itself.

Tounisi, then 18 years old, solidified his plans in April 2013. He bought a ticket for a flight on April 19 to Istanbul. The day before his flight, the "recruiter" sent him a bus ticket for Istanbul to Gaziantep and promised that "brothers" would be waiting to take him to a training camp in Syria. Tounisi responded by describing what he would be wearing when he arrived. As scheduled, he went to O'Hare International Airport to catch his flight to Turkey. He made it as far

as the airport gate before federal agents approached, questioned, and ultimately arrested him. Tounisi was charged with knowingly attempting to provide material support to a foreign terrorist organization, *see* 18 U.S.C. § 2339B(a)(1), and making false statements in connection with an offense involving international terrorism, *see id.* § 1001(a)(2). He pleaded guilty to the first charge in exchange for dismissal of the second.

A probation officer determined that Tounisi had a total offense level of 37 and a criminal history category of VI, each heavily influenced by the offense qualifying as a federal terrorism crime: the offense level was increased by 12 and the criminal history category automatically raised from I to VI. *See* U.S.S.G. § 3A1.4. The guideline imprisonment range would have been 360 months to life with those extended parameters. But that range exceeded the then-statutory maximum of 180 months, which thus became the applicable advisory guideline imprisonment term. Because Tounisi's terrorism crime also posed a foreseeable risk of injury to another person, the policy statements for supervised release recommended a term of 1 year to life. *See* U.S.S.G. § 5D1.2(b)(1).

In his sentencing memorandum, Tounisi advocated for an 84-month prison sentence followed by a 10-year term of supervised release. He relied on a report by Dr. Marc Sageman, an expert in "forensic psychiatry and terrorism," who had interviewed him. Dr. Sageman concluded that Tounisi was "at no greater risk than the normal population of being a danger to the public," and that he was "not so brainwashed ideologically" that he remained a risk to run off to fight. Tounisi agreed that the guidelines were correctly calculated but argued that the increases for a terrorism offense resulted in an

overstated sentencing range because (1) he was placed in the highest criminal history category despite having no prior criminal history; and (2) he did not target the United States but instead, in a misguided effort, meant to help combat the dictatorial Syrian government.

Tounisi also highlighted several of the 18 U.S.C. § 3553(a) factors. First, as to his history and characteristics, *id.* § 3553(a)(1), he had struggled with depression and isolation resulting from his family's financial struggles and the religious and racial discrimination they experienced, so he had turned to religion to cope. Now that his plans had been thwarted, he was remorseful and thankful he had not succeeded. When looking at the nature and circumstances of the offense, *id.*, Tounisi reiterated that his choice to join Jabhat al-Nusrah was influenced by his isolation and motivated by his desire to help fight the Syrian government rather than a wish to join a terrorist group. He explained that he was friends with Adel Daoud, an 18-year-old from his mosque who tried to detonate a bomb in downtown Chicago. Tounisi had briefly considered helping Daoud but later tried, to no avail, to dissuade him from attempting to carry out the attack.

Additionally, Tounisi argued against a significant need for deterrence, *id.* § 3553(a)(2)(B), and for further punishment, *id.* § 3553(a)(2)(A). He asserted that specific deterrence was unnecessary, citing empirical studies showing that (1) being a first-time offender, (2) having strong family ties, and (3) enduring swift and sure punishment all greatly decreased his chances of reoffending. Moreover, his youth and immaturity partially explained his conduct, and he would have matured by his release from prison after his requested 84-month sentence. As for general deterrence, Tounisi pointed to studies

showing that other consequences related to prosecution (social stigma, etc.) were more effective deterrents than incarceration. Further, Tounisi already had been incarcerated for almost 20 percent of his life and had to carry the stigma of being a "terrorist" and felon forever, so punishment beyond his suggested sentence would not be "just."

Separately, Tounisi suggested changes to a few proposed conditions of supervised release but otherwise did not object to them. He requested a 10-year term, or alternatively, the possibility of early termination of a longer term.

The government argued for a 15-year term of imprisonment. It submitted that the offense was particularly serious despite Tounisi's stated goal of fighting the oppressive Syrian government. After all, by joining a terrorist group associated with al-Qaida, he was joining an enemy of the United States, and his plans easily could have backfired: he could have killed innocent Syrian people or been forced to return to the United States to commit an attack here. The government also pointed to Tounisi's perseverance in committing his offense. He had not been deterred by FBI questioning after Daoud's arrest, his family trying to stop him by taking away his passport, or his pursuit of educational opportunities.

At the sentencing hearing, Tounisi repeated the mitigating arguments: his difficult background, his remorse, his ill-advised friendship with Daoud, and his youth. Tounisi again emphasized that his offense was less severe than a typical terrorism offense, and that the goals of general deterrence and just punishment could be satisfied without a 15-year sentence. Counsel did not mention the proposed 10-year term of supervised release. The government described Tounisi as someone who "was not going to be deterred," reiterating the lengths he

undertook in attempting to get to Syria. The government also argued that general deterrence was paramount in order to dissuade others who might be young and naïve from following in Tounisi's footsteps.

After the parties' arguments, the district judge solicited their views on the proposed conditions of supervised release (not the term's length). He then repeated the parties' written and oral sentencing arguments before discussing his view of the § 3553(a) factors. The judge noted that Tounisi had been struggling in life but concluded that those difficulties "cannot excuse the seriousness of his crime," which weighed "heavily." He remarked that many immigrants face discrimination, but most do not resolve to join an international terrorist organization. The judge opined that, despite Tounisi's supposed noble intentions, he still was aligning himself with a group that advocates for the destruction of the United States and had placed himself at risk of becoming "a pawn" in a future attack against the country. The judge thus thought his crime, though never consummated, ranked "at the top."

The judge also concluded that Tounisi's actions showed that he needed to learn respect for the law. He had not warned anyone about Daoud's plans, had not been deterred even after speaking with the FBI about his friend's arrest, and had lied to agents when they caught him at the airport. Next, the judge said that "there is a definite need to deter the defendant and others" from committing terrorism offenses. He emphasized that he had considered Tounisi's argument that specific deterrence was unnecessary but said that "a great need for general deterrence" existed because people must know that they will be punished for "assisting terrorist organizations."

The judge, moreover, thought that the public needed protection from Tounisi because—irrespective of his motivations and newfound remorse—he had been willing to hurt innocents. The judge also briefly reviewed Dr. Sageman's conclusions about Tounisi being at a decreased risk of recidivism.

Addressing Tounisi directly, the judge noted that he had deliberately thrown away his opportunity to attend college and help people in a positive way in order to "join a bunch of thugs that take pride in cowardly killings," even defying his family to do so. The judge sentenced him to 180 months in prison—the statutory maximum—adding that the factors "would warrant a significantly higher sentence" if there had not been a cap. Having "considered the factors in Section 3553(a) in determining the conditions of supervised release," the judge imposed a lifetime term and repeated those conditions.

## II. Discussion

On appeal, Tounisi asserts that the district judge erred only procedurally in determining his sentence, but he challenges nearly every aspect of the judge's reasoning. Tounisi, in short, wants de novo review of all the issues he raises, even if they touch on the substantive reasonableness of the sentence. *See United States v. Thompson*, 864 F.3d 837, 841 (7th Cir. 2017), *cert. denied*, 138 S. Ct. 704 (2018) (explaining procedural challenges to sentence are reviewed de novo and substantive challenges are reviewed for abuse of discretion).

First, Tounisi takes issue with how the judge handled his mitigating arguments, contending that he repeated them but did not explain *how* he evaluated them. A district judge must

address the defendant's principal arguments made in mitiga-
tion, but the explanation can be implicit or imprecise and does
not need to be extensive. *See United States v. Reed*, 859 F.3d
468, 472–73 (7th Cir. 2017); *United States v. Davis*, 764 F.3d 690,
694 (7th Cir. 2014). It must be detailed enough that we can
recognize that the judge "considered the argument and ha[d]
a reasoned basis" for how he weighed it. *Davis*, 764 F.3d
at 694. The judge did that here.

He acknowledged several mitigating factors—Tounisi's
lack of criminal history, mistreatment by others, youth, and
depression and isolation—but Tounisi says he then "baldly
assert[ed]" that they could not "excuse" the severity of the
crime. The judge understandably considered these points to-
gether, however, because the first sentencing factor encom-
passes both "the nature and circumstances of the offense" *and*
"the history and characteristics of the defendant." 18 U.S.C.
§ 3553(a)(1). And as he explained more than once, the judge
thought that the offense was still gravely serious in spite of
Tounisi's argument that his was not a typical "terrorism" of-
fense and other mitigating arguments. In context, "excuse"
meant "outweigh": the nature and severity of the offense
overshadowed the mitigating factors.

Tounisi also contends that the judge mishandled his miti-
gating argument about specific deterrence. He says that the
judge's remarks lacked logic and ignored the parties' posi-
tions. But the judge largely accepted that, as the parties
agreed, specific deterrence was unnecessary. Though he re-
marked on the "definite need" to deter Tounisi (and "oth-
ers"), he then repeated Tounisi's primary arguments about
why specific deterrence was unimportant. Relatedly, Tounisi

contends that the judge should have explicitly accepted or rejected Dr. Sageman's conclusions about his risk of recidivism or explained their effect. Not so. Tounisi used Dr. Sageman's conclusions throughout his presentation to support his views on the § 3553(a) factors, and the district judge addressed each of those arguments. Thus, even though the judge did not orally state his view of Dr. Sageman's conclusions, he considered the primary subject of the report, and a need for specific deterrence did not figure heavily, if at all, in his selection of a maximum sentence. It is clear, though, that general deterrence did play a role in the judge's decision—he concluded that "a great need for general deterrence" existed and explained why.

Second, Tounisi maintains that the judge erred by failing to explain why a shorter sentence would not suffice, relying on *United States v. Ferguson*, 831 F.3d 850 (7th Cir. 2016). But in *Ferguson* the district court had ignored both parties' sentencing recommendations and imposed a sentence more than two-and-a-half times longer than the high end of that guideline range without justifying the choice. *Id.* at 854–55. In concluding that more explanation was needed, we relied on the Supreme Court's admonishment that a "major departure" requires "a more significant justification than a minor one." *Id.* at 854 (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). Here the judge chose the guideline sentence of 180 months, so it follows that an extended explanation of why he did not pick a lower sentence was unnecessary. *See United States v. Kappes*, 782 F.3d 828, 864 (7th Cir. 2015). Still the judge more than fulfilled his obligation to explain the chosen sentence: he carefully covered every § 3553(a) factor and addressed each of Tounisi's mitigating arguments.

Third, Tounisi argues that the judge improperly weighed several § 3553(a) factors. The government asserts that these are actually disputes with the sentence's substantive reasonableness, not procedural arguments, but Tounisi persists in calling them "procedural" in his reply brief. We agree with the government that Tounisi is challenging the substance of the district judge's decision, *see United States v. Warner*, 792 F.3d 847, 856 (7th Cir. 2015), but his arguments are meritless either way. He confusingly contends that the judge erred in finding a need to promote respect for the law by focusing solely on the offense conduct. Tounisi points to his remorse, honesty with the government, and desire to help others avoid the same path to show that he respects the law. He never made that argument at sentencing, though, and even if he had, it does not defeat the judge's concerns about Tounisi's persistence in joining a terrorist group and his lies to the FBI.

Tounisi also asserts that the judge placed the seriousness of the offense above all other factors, thereby disregarding him as an individual and implying that all defendants convicted of a "terrorism" offense would warrant the maximum sentence. But the judge consistently referred to the circumstances of Tounisi's case, including that he had carefully planned the offense, ignored his parents' wishes, knowingly sought to join a terrorist group, and risked being turned against the United States. The judge made it clear that he considered the offense serious not just because it was a terrorism offense but because of how Tounisi committed it and the damage he could have foreseeably caused.

Last, Tounisi argues that the district judge did not sufficiently justify the lifetime term of supervised release. (At oral

argument, Tounisi's counsel clarified that he does not challenge any of the supervised-release conditions on appeal.) Tounisi points out that he contested the length of the recommended term of supervised release in his sentencing filings, yet the district judge did not specifically address the parties' divergent proposals, except to say that he had considered the § 3553(a) factors. Tounisi cites a case in which we remanded the defendant's sentence so that the district court could consider the defendant's "serious arguments" about supervised release and "the interaction between the length and terms of supervised release." *United States v. Quinn*, 698 F.3d 651, 652 (7th Cir. 2012).

Although Tounisi undoubtedly preserved his argument about the length of supervised release, we cannot say that he prioritized it at sentencing. He requested a 10-year term twice in filings, but counsel never mentioned that request during the sentencing hearing. These two written comments about supervised-release length are unlike the "serious arguments" made in *Quinn* and instead are more like those we characterized as not even "principal" arguments in *Kappes*. *See* 782 F.3d at 846–47. There, a defendant's counsel requested 10 years of supervised release just once at the end of oral remarks during sentencing. *See id*.

As we did in *Kappes*, we conclude that, without any particular emphasis on the supervised-release term, the judge was not obligated to explain it at length. *Id.* at 847. His decision to discuss his "reasons for imposing the sentence as a whole" was "a reasonable choice." *Id.* Supervised release and prison are part of "a single sentence," and therefore just "one overarching explanation and justification—tethered, of course, to the § 3553(a) factors"—is required. *United States v.*

*Oliver*, 873 F.3d 601, 610–11 (7th Cir. 2017) (internal citation omitted); *see also United States v. Moose*, 893 F.3d 951, 960 (7th Cir. 2018). A district judge is not required to rehash the relevant factors after he has just discussed them as they relate to an appropriate imprisonment term. *See Oliver*, 873 F.3d at 611. The judge in this case carefully reviewed the § 3553(a) factors when he explained the prison sentence, so repeating his explanation in the supervised-release context was in no way required, especially since he chose a term within the range suggested by the policy statements.

Tounisi emphasizes, however, that the factors that may be considered for purposes of determining the term of supervised release are slightly different than the § 3553(a) factors. The relevant statute for supervised release, 18 U.S.C. § 3583(c), instructs a district judge to consider the factors listed in § 3553(a), except for "the need for the sentence imposed" "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment," § 3553(a)(2)(A), and "the kinds of sentences available," § 3553(a)(3). Thus, Tounisi maintains that the judge placed the offense's seriousness above all else, so the justification given for the imprisonment term cannot support the chosen supervised-release term. But Tounisi misunderstands the judge's reasoning. The judge permissibly considered "the nature and circumstances of the offense," 18 U.S.C. § 3553(a)(1), in determining both the appropriate terms of imprisonment and supervised release. The discussion of that sentencing factor, just like the discussion of the offense's seriousness, was just one part of an extensive explanation for the sentence imposed.

For the foregoing reasons, we AFFIRM the judgment.