In the

# United States Court of Appeals
## For the Seventh Circuit

No. 18-2644

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

FRANKIE BROWN,

*Defendant-Appellant.*

No. 18-2760

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MARCUS J. THORNTON,

*Defendant-Appellant.*

Appeals from the United States District Court for the
Southern District of Illinois.
Nos. 17-cr-30097 and 17-cr-30033 — **Michael J. Reagan**, *Judge.*

ARGUED APRIL 16, 2019 — DECIDED AUGUST 7, 2019

Before EASTERBROOK, KANNE, and SCUDDER, *Circuit Judges*.

KANNE, *Circuit Judge*. Frankie Brown pled guilty to distributing a controlled substance. Marcus Thornton pled guilty to bank robbery and an associated firearms charge. The same district court separately imposed terms of supervised release on both defendants, in addition to imprisonment. The court set several conditions of supervised release, including both mandatory and discretionary conditions. But it also imposed a set of "administrative conditions," which the probation office deemed "applicable whenever supervision is imposed, regardless of the substantive conditions that may also be imposed." Both defendants now contend that the imposition of administrative conditions violated their due process rights under the Fifth Amendment.

We consolidate the two appeals because of the overlapping legal question. But neither defendant objected to the conditions in the district court, and so both waived the issue altogether. The defendants' other challenges also fail. We therefore affirm the sentences.

## I. BACKGROUND

*A. Brown's Plea and Sentencing*

Brown sold 10.8 grams of cocaine to a confidential informant in April 2017. In September, he pled guilty to one count of distributing a controlled substance, 21 U.S.C. § 841. In December, the probation office filed a Presentence Investigation Report ("PSR") with the court. The PSR calculated a base offense level of 12. However, Brown had an extensive criminal record. His prior convictions included at least two offenses qualifying him as a career offender under U.S.S.G. § 4B1.1. That designation increased his offense level to 32. Including a 3-level

reduction for acceptance of responsibility, the PSR recommended a total offense level of 29. The same guidelines mandate a criminal history category of VI, yielding a guidelines range of 151–188 months in prison.

The PSR also recommended the mandatory three-year term of supervised release under 21 U.S.C. § 841(b)(1)(C). It suggested several conditions to facilitate the supervision, including the usual mandatory conditions under 18 U.S.C. § 3583(d) and several special conditions tailored to Brown's personal characteristics. It also recommended nine "administrative" conditions, which it deemed "applicable whenever supervision is imposed, regardless of the substantive conditions that may also be imposed." Brown and his counsel received the PSR in December.

The court continued the case for several months to permit Brown to undergo competency hearings and obtain new counsel. In June 2018, six months after receiving the PSR, Brown filed a sentencing memorandum recommending a 60-month sentence. In its own memorandum, the government recommended 151 months—the low end of the guidelines range. Brown also filed an objection to the PSR, arguing that one of his prior offenses did not qualify to support a career offender designation. Later that month, on the day of the sentencing hearing, Brown signed a written waiver of his right to a reading of terms and conditions of supervised release at the hearing. It included the following language:

> Defendant understands that, because no objections regarding the terms and conditions of supervised release recommended in the PSR have been filed, the Court may impose upon Defendant all of the terms and conditions of supervision recommended in the

> PSR which the Court finds to be appropriate. Defendant understands that the terms and conditions of supervision determined to be appropriate by the Court will be included in the judgment… . Defendant has no objection to the imposition of the conditions of supervision set forth in the PSR and Defendant has no objection to the wording of the conditions. Defendant agrees that the PSR sets forth adequate explanation for the necessity of the conditions, and Defendant understands the conditions.

At sentencing, the district court adopted the PSR's findings. It found that Brown's prior convictions did qualify him as a career offender, overruling his sole objection to the PSR. It acknowledged that Brown's criminal conduct was relatively minor and that the career-offender enhancement "increase[d] his sentence seven-fold." In light of that disparity, the district court departed downwards from the guidelines range and sentenced Brown to 120 months in prison, as well as the mandatory three years of supervised release. The court confirmed with Brown that he had waived the reading of the conditions and that he understood them, discussed them with counsel, and had no questions about them.

*B. Thornton's Plea and Sentencing*

In March 2018, Marcus Thornton pled guilty to two counts of bank robbery, 18 U.S.C. § 2113(a). The next month, he pled guilty to one count of brandishing a firearm during a crime of violence, 18 U.S.C. § 924(c)(1)(A)(ii). In return, the government agreed to dismiss a second § 924(c) count. He was on supervised release for a prior bank robbery when he committed the two bank robberies underlying the new convictions.

On June 22, probation filed a PSR. After incorporating various enhancements and a three-level reduction for acceptance of responsibility, the PSR calculated a total offense level of 27. Together with a criminal history category of III, the PSR indicated a guidelines range of 87–108 months on the robbery counts and a mandatory-minimum sentence of 84 months on the firearms count, for a total range of 171–192 months. The PSR also recommended three years of supervised release. As in Brown's case above, in addition to the mandatory and discretionary conditions, the PSR recommended nine "administrative" conditions that are "applicable whenever supervision is imposed" and "basic requirements essential to supervision." Neither Thornton nor the government filed written objections to the PSR.

The district court held the sentencing hearing on July 27, adopting the PSR's findings. The government recommended an above-guidelines sentence of 360 months, noting that a conviction on the second firearms count contained in the indictment (which the government agreed to drop under the plea agreement) would have increased the applicable guidelines range to 471–492 months in prison. It also reminded the court that Thornton had been on supervised release for bank robbery at the time he committed the instant offenses, suggesting that he was likely to recidivate. The defense recommended a sentence within the guidelines range, pointing out that the government's recommendation of 30 years in prison would amount to a life sentence for Thornton, who was then 38 years old and suffered from various medical problems. A guidelines sentence would permit his release in his early 50s.

The district court advised the parties to request further clarification on any particular factor under 18 U.S.C. § 3553(a)

if they so desired. It indicated its policy disagreement with the guidelines range because of the aggravating factors present in the case. It imposed concurrent sentences of 144 months on each robbery count and the mandatory 84 months for the firearms count, yielding a total sentence of 228 months in prison. The court again invited the parties to request more explanation of any sentencing factor, but they both declined. It also imposed a three-year term of supervised release under the conditions outlined in the PSR. As in Brown's case, Thornton had signed a waiver of the reading of the conditions of supervised release, which indicated that he understood them and had no objection. The district court confirmed those facts with Thornton himself at the hearing. After the parties indicated that they had no further questions or issues to discuss, the district court adjourned the hearing.

## II. ANALYSIS

Brown argues first that the district court relied on incorrect information in the PSR when imposing the conditions of supervised release, namely that the administrative conditions are not required when a court imposes supervised release but rather are within the court's discretion. Second, he contends that the district court procedurally erred by failing to justify its downward variance adequately and omitting key criteria from the consideration of his history and characteristics. Last, he believes the sentence was substantively unreasonable.

Thornton mounts the same challenge to the administrative conditions of supervised release that Brown poses. He also argues that the district court procedurally erred by failing to consider his mitigating arguments during sentencing.

*A. Challenge to the "Administrative" Conditions of Release*

We evaluate procedural challenges to sentences *de novo*. *United States v. Pennington*, 908 F.3d 234, 238 (7th Cir. 2018). Both defendants argue that the district court sentenced them on the basis of incorrect information, which is a *per se* violation of due process. *United States ex rel. Welch v. Lane*, 738 F.2d 863, 864 (7th Cir. 1984). In other words, the sentences would automatically be invalid even if they were otherwise reasonable and within the discretion of the sentencing judge. *Cf. Dean v. United States*, 137 S. Ct. 1170, 1178 (2017) (reversing a sentence based on an incorrect reading of the mandatory-minimum provision of 18 U.S.C. § 924(c)).

The PSRs contained three separate groups of conditions in their recommendations for supervised release. The first were the mandatory conditions under 18 U.S.C. § 3583(d) and U.S.S.G. § 5D1.3(a) (do not commit another crime, do not possess a controlled substance, submit to drug testing, and submit a DNA sample). The PSRs cited the authorizing statute. There were also special (discretionary) conditions, which we need not repeat here. The PSRs correctly stated that those conditions were authorized by 18 U.S.C. §§ 3553(a), 3583(d).

Finally, the PSRs contained a group of nine "administrative" conditions. They were run-of-the-mill conditions that often accompany terms of supervised release, including a requirement to report to the probation office following release from prison, a prohibition on possessing firearms, a direction not to leave the judicial district without permission, and a requirement to communicate with the probation office on a regular basis. The PSRs cited no authority for these conditions, but they stated:

> The following conditions of supervision are administrative and applicable whenever supervision is imposed, regardless of the substantive conditions that may also be imposed. These conditions are basic requirements essential to supervision.

Brown and Thornton challenge these conditions. They argue that the PSRs suggested the conditions are mandatory, but there is no statutory basis for that proposition. As a result, the district court must have thought that it was bound to apply them, when in truth it had discretion to accept or reject them as it saw fit.

But neither defendant objected to the conditions in the district court. For that reason, the defendants now ask us to review the conditions for plain error. *United States v. Bickart*, 825 F.3d 832, 839 (7th Cir. 2016). The government argues that both defendants waived the challenges, thus precluding appellate review. *United States v. Bloch*, 825 F.3d 862, 873 (7th Cir. 2016). We liberally construe waiver in favor of defendants. *United States v. Butler*, 777 F.3d 382, 387 (7th Cir. 2015).

Brown received the PSR, which contained all the material he now challenges, six months prior to sentencing. He filed written objections to the PSR, but he did not include any objections to the conditions of supervised release. He signed a written document confirming that he understood the conditions and discussed them with his lawyer and waiving any objections. The district court revisited those issues with him at sentencing and again confirmed that he had no objections. That's waiver. *See United States v. Flores*, No. 18-3249, 2019 WL 2847453 at *6 (7th Cir. Jul. 3, 2019) ("We will find waiver … when the defendant has notice of the proposed conditions, a meaningful opportunity to object, and she asserts (through

counsel or directly) that she does not object to the proposed conditions, waives reading of those conditions and their justifications, challenges certain conditions but not the one(s) challenged on appeal, or otherwise evidences an intentional or strategic decision not to object.").

Thornton's case is closer. Although he had several weeks' notice of the conditions, he did not file written objections in advance. "When a defendant has received advanced notice of conditions of supervised release and is invited to object to them in the district court, a 'failure to object … can amount to waiver.'" *United States v. Tjader*, 927 F.3d 483, 485 (7th Cir. 2019) (quoting *United States v. Gabriel*, 831 F.3d 811, 814 (7th Cir. 2016)). And the district court offered to read and explain the terms and conditions of supervised release unless Thornton indicated his understanding and agreed that they were justified. Thornton signed the waiver, thus affirmatively relinquishing his right to challenge the "imposition," "wording," or "necessity" of the conditions.

This record involves most of the indicators of waiver we listed in *Flores*: advance notice, a meaningful opportunity to object, no objections, and a written waiver of further explanation of the conditions or their necessity. Like Brown, Thornton waived any challenge to imposition of the administrative conditions.[1] If either defendant believes any particular condition

---

[1] The defendants' waiver precludes us from squarely addressing their challenge to the administrative conditions. We note briefly, however, that the challenged language in the PSR—which could be interpreted as requiring imposition of the administrative conditions—is exceedingly similar to our language in *United States v. Thompson*, 777 F.3d 368, 378 (7th Cir. 2015) ("Some conditions of supervised release are administrative

to be onerous or unjustified as applied, he may ask the district court to modify the condition under 18 U.S.C. § 3583(e)(2). *United States v. Williams*, 840 F.3d 865 (7th Cir. 2016).

### B. Brown's Remaining Challenges

Beyond the conditions of supervised release, Brown challenges both the procedure and substance of his sentence. We start with his procedural arguments. First, he contends that the district court failed to consider his age in its § 3553(a) analysis. Second, he suggests that the court improperly believed that it could not reject the career-offender guidelines. Either challenge would be grounds for vacating the sentence and remanding for resentencing. *Gall v. United States*, 552 U.S. 38, 51 (2007). But neither argument succeeds.

First, Brown points to scholarship demonstrating that most career offenders age out of crime in their thirties. *See, e.g.,* John Pfaff, Locked In: The True Causes of Mass Incarceration and How to Achieve Real Reform 190–96 (2017). Brown was 34 years old when the district court sentenced him to ten years in prison, so he will be in his mid-40s upon release. He infers from that fact that the district court must therefore have failed to consider his age as a mitigating factor under

---

requirements applicable whenever a term of supervised release is imposed, regardless of the substantive conditions that are also imposed."); *id.* (describing administrative conditions as "necessary incidents of supervision"). *Thompson* held that courts need not justify conditions that are required for an ordered system of supervision (like timely reporting to the probation officer). If a given condition isn't universally applicable to all supervisees, it's likely substantive and not administrative. And, in that case, the court must explain why it is imposing the condition.

§ 3553(a), because consideration of the relevant scholarship would necessarily have yielded a shorter sentence.

But his argument falters for two reasons. Brown did not bring his age to the attention of the district court, so at best, he has forfeited the issue. But more importantly, the record shows that the district court properly took age into consideration. The court described Brown as a "34-year-old man" and remarked that Brown "is still young enough that with a significant sentence he can get out and become a productive member of society and take care of his four kids." It also stated that "[w]e know based upon his age and criminal history he is more likely to recidivate than somebody who is older with less criminal history, but I don't sentence him based on the statistics of others." Rather than failing to consider Brown's age, it seems that the district court did not consider it *in the way that Brown desired*. That's not error under *Gall*. 552 U.S. at 59.

Second, Brown focuses on a single remark of the district court: "[I]f [Brown] were not a career offender, I would not sentence him to ten years." From that utterance, Brown infers that the district court did not realize that the career-offender guidelines, like all guidelines, are advisory rather than mandatory. *See United States v. Corner*, 598 F.3d 411, 415–16 (7th Cir. 2010) (en banc) (permitting district courts to reject career-offender enhancements entirely). Under Brown's theory, the district court would have varied the sentence downward even further had it understood that it had discretion to reject the career-offender guidelines.

But the district court *did* reject those guidelines: Brown's sentence was 31 months below the guidelines range of 151–188 months. Moreover, Brown cited *Corner* in his sentencing

memorandum to inform the court of its discretion, and it seems that the court took its discretion into account when varying downwards. Perhaps the court felt it necessary to give Brown a longer sentence than it would have given to a first-time offender who committed the same offense, but that's within the sentencing judge's discretion under § 3553(a). The district court did not commit procedural error when it sentenced Brown to 120 months in prison.

Finally, Brown contends that his 10-year sentence is substantively unreasonable. After reviewing Brown's lengthy criminal record, the district court determined that "a significant sentence" was necessary to deter him from future criminal activity. In *United States v. Presley*, we reviewed current scholarly literature and concluded that because "[t]he length of a sentence … has less of a deterrent effect on [a defendant] than the likelihood that he'll be caught, convicted, and imprisoned, … [a]n increase in the length of a sentence may … add little additional deterrence." 790 F.3d 699, 701–02 (7th Cir. 2015). In that case, the district court sentenced a low-level drug offender to almost forty years in prison on facts that are like Brown's. As a result, Presley would be nearly 70 years old upon release. But even under those circumstances, while we questioned whether the long sentence was just, we did not find it substantively unreasonable because it was within the guidelines range. *Id.* at 703.

Brown's sentence is nothing like Presley's. The district court sentenced Brown to ten years—about one quarter of the sentence in *Presley*. Moreover, Brown's sentence was *below* the applicable guidelines range. "A sentence within a properly calculated guidelines range is presumptively reasonable, but more to the point here, we have never deemed a below-range

sentence to be unreasonably high. [Brown's 120]-month sentence [was below] the low end of the guidelines range of 151 to 188 months. [He] has given us no good reason to overturn [his] sentence as unreasonably long." *United States v. Gumila*, 879 F.3d 831, 837 (7th Cir. 2018) (internal citation and quotation omitted).

### C. Thornton's Remaining Challenges

Thornton separately argues that the district court failed to address his principal arguments in mitigation at sentencing. We review that issue *de novo*. *United States v. Mendoza*, 510 F.3d 749, 754 (7th Cir. 2010). At sentencing, Thornton argued that his prior military service and his medical issues were mitigating factors that the court should consider in its determination. He now says that the district court did not address them in its explanation of his history and characteristics under § 3553(a).

A district court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Gall*, 552 U.S. at 50. We've held that "[a] judge who fails to mention a ground of recognized legal merit (provided it has a factual basis) is likely to have committed an error or oversight." *United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005). But we also "encourage sentencing courts to inquire of defense counsel whether they are satisfied that the court has addressed their main arguments in mitigation." *United States v. Garcia-Segura*, 717 F.3d 566, 569 (7th Cir. 2013). "If the response is in the affirmative, a later challenge for failure to address a principal mitigation argument … [is] waived." *Id.*

In that vein, we've distinguished between instances in which a court merely asks if there's "anything further" to

discuss, *United States v. Morris*, 775 F.3d 882, 885 (7th Cir. 2015), and those in which the court specifically asks if the parties desire further elaboration of the court's reasoning, *United States v. Donelli*, 747 F.3d 936, 941 (7th Cir. 2014). In the latter, when the defendant indicates that he is satisfied with the justification, we will not remand a case merely so that the district court may give a better explanation of its reasoning. If the district court doesn't provide an adequate justification, the time to point that out is at sentencing. *Id.*

The district court followed our guidance. At the outset of the discussion of the § 3553(a) factors, the district court said,

> Counsel, as is my habit I am going to talk about a few of the 18[] U.S.C. [§] 3553 factors, but if either side wants me to expand on one or more at the conclusion, I'll be happy to do that. Otherwise I assume my explanation is legally and factually accurate and sufficient for meaningful appellate review.

The district court later asked, "Does the Government request any further amplification of the 3553 factors?" The government demurred. The court then turned to defense counsel. "[Counsel], do you?" Thornton's attorney replied, "No, Your Honor."

In *Donelli*, the district court asked defense counsel, "do you have any legal objection to the sentence or do you request any further elaboration of my reasons?" Tr., No. 12-cr-139 (S.D. Ind. Oct. 3, 2013), ECF No. 69 at 50. That was enough to prompt the defendant to raise remaining arguments in mitigation, and we concluded that the defendant waived any such argument on appeal after failing to raise it in the district court. As in *Donelli*, Thornton "did not point to any mitigating argument the judge had failed to address. [He] is therefore

foreclosed from arguing on appeal that a principal argument remained unaddressed." 747 F.3d at 941.

Anticipating this bar, Thornton criticizes the rule in *Garcia-Segura* and implicitly asks us to depart from it. We decline to do so. As we noted in *Donelli*, "The *Garcia-Segura* approach makes it possible to correct a genuine *Cunningham* procedural error on the spot, at the end of the sentencing hearing in the district court. That is preferable to correction after appellate review, a year or more of delay, and a new hearing after remand." *Id.* That reasoning still holds true, and Thornton cites no intervening legislation or Supreme Court case law that would prompt us to reconsider.

### III. CONCLUSION

Both Brown and Thornton challenge the sentences they received following their guilty pleas. But both declined to raise several of their arguments in the district court, and their remaining contentions lack merit. For those reasons, we AFFIRM the judgments of the district court.