In the

# United States Court of Appeals
## For the Seventh Circuit

No. 20-1463

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JONATHAN STEPHENS, also known as JOHNATHAN STEPHENS, also known as JONATHAN WATTS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:18-CR-00044-1 — **Ronald A. Guzmán**, *Judge.*

ARGUED DECEMBER 15, 2020 — DECIDED FEBRUARY 2, 2021

Before KANNE, HAMILTON, and BRENNAN, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Appellant Jonathan Stephens pleaded guilty to transporting child pornography in violation of 18 U.S.C. § 2252A(a)(1). The district court sentenced him to 151 months in prison, at the bottom of the applicable Sentencing Guideline range. On appeal, Stephens challenges his sentence. He contends that the district court improperly disregarded the probation officer's recommendation of a below-

guideline sentence, his own primary arguments in mitigation, and the statutory sentencing factors set forth in 18 U.S.C. § 3553(a). We affirm.

I.   *Background*

In December 2016, federal agents seized from Stephens's home fifteen electronic devices with over 184,000 pornographic images and videos of children. Two years later, before federal charges were filed, undercover officers discovered that Stephens in the meantime had downloaded at least 10,000 more images and videos of child pornography. The agents also determined that Stephens had used his computer to share some of the files.

Stephens was charged with five counts of transporting and possessing child pornography, and he ultimately pleaded guilty to one count of transporting in violation of 18 U.S.C. § 2252A(a)(1). A probation officer calculated the guideline range as 151 to 188 months in prison based on a total offense level of 34, see U.S.S.G. § 2G2.2, and a criminal history category of I. (Stephens had no criminal history points.)

Several offense characteristics increased the base offense level, including Stephens's use of a computer, knowledge of distribution, collection of more than 600 images, images with children under twelve years of age, and depictions of sadistic or masochistic abuse of children. See § 2G2.2(b). The officer separately recommended a below-guideline sentence of 108 months, however, reasoning that the two-level enhancement for using a computer is outdated. But the officer also suggested that an upward variance could be appropriate because

Stephens possessed such a large quantity of child pornography and because the first search of his home had no deterrent effect as he went on to re-establish his collection.

Stephens asked the court to sentence him to the five-year mandatory minimum. In support, he relied on the probation officer's policy disagreement with the computer-based guideline enhancement. Stephens also argued that adopting a total of fifteen offense levels' worth of enhancements would result in an artificially high sentence. See *United States v. Dorvee*, 616 F.3d 174, 184 (2d Cir. 2010). He also cited a psychosexual evaluation he underwent with a clinical psychologist, who concluded that, as a child-pornography only (i.e., "no-contact") offender, Stephens was unlikely to "sexually offend in the future." Finally, Stephens asserted, his autism spectrum disorder, avoidant personality disorder, and depression diagnoses reduced his need for deterrence.

At the sentencing hearing, Stephens agreed to the guideline calculation and briefly reiterated his written arguments. He explained why he resumed amassing child pornography after officers initially seized his collection. He said that he had not yet been arrested and, at the time, believed: "I did nothing wrong, and I … got bored." More recently, his attorney explained, Stephens had taken "significant steps" to "make sure he does not re-offend," including participating in a cognitive skills class, behavioral treatment, and reflection.

After adopting the PSR's guideline calculations without objection, reviewing the supplemental reports and submissions, and hearing the parties' arguments, the district court sentenced Stephens to 151 months in prison. The court began its reasoning with the "most blatant factor," the "seriousness of [Stephens's] offense." He collected "a staggering amount,

more than anything I've ever heard of." (To be clear, transporting or possessing one image of child pornography is a felony. The Guidelines increase the offense level by two levels for 10 or more images, by three levels for 150 or more images, by four levels for 300 images or more, and by five levels for 600 or more images. Stephens possessed *more than 320 times* the 600 images needed to max out on the guideline factor.)

And the images went beyond "mere" child pornography, which is awful enough to warrant some of the most severe penalties under federal criminal law. These images depicted violent, traumatic, and sadistic abuse. The court's overriding apprehension was with "[t]he number of children seriously and irreversibly traumatized by the making of these pictures and videos."

The court was also "very concerned about [Stephens's] ability to rehabilitate." The initial seizure, "despite Stephens statements … had no deterrent effect whatsoever as [Stephens] found the means to collect yet another 10,000 images." And, although the court doubted that Stephens could "realize the pure evil of these images," it emphasized that his professed inability to understand was "chilling because it tells us that in the future, there is nothing to prevent him from continuing to do this." The court noted that Stephens was beginning to understand the consequences of his actions but said "it would be a grave risk" to impose a below-guideline sentence. The court also considered general deterrence, hoping to signal "that anyone who engages in this voluntary behavior is risking grave consequences."

II. *Analysis*

Stephens raises three procedural challenges to his sentence, which we review de novo. *United States v. Gill*, 889 F.3d 373, 377 (7th Cir. 2018).

A. *The Probation Officer's Recommendation*

Stephens first argues that the district court erred when it did not explicitly address on the record the probation officer's separate recommendation of a below-guideline sentence. He contends that the court must articulate reasons for disregarding such a recommendation, at least if the defendant relies on it.

This argument is profoundly mistaken, and we are publishing this as a precedential opinion to make this point. A district court need not address a probation officer's recommendation at sentencing. Our ruling is not intended as any disrespect for the valuable work that probation officers do. All members of this panel have benefited from thoughtful advice from probation officers. A big part of the work of federal probation officers is to provide invaluable information and insight to district courts for sentencing decisions. Ultimately, however, probation officers work for the court. It is then up to the court to decide whether even to disclose their recommendations (as distinct from the PSR and its guideline calculations). The court also decides how to weigh those recommendations.

We have explained before that district courts are not required to give any deference to a probation officer's recommendation in a PSR, let alone to explain a disagreement on the record. See *United States v. Schuler*, 34 F.3d 457, 461

(7th Cir. 1994) (court not required to make findings about "inappropriateness of [the probation officer's] recommendation"); *United States v. Guadagno*, 970 F.2d 214, 224 (7th Cir. 1992) (same, regarding a probation officer's acceptance-of-responsibility endorsement); *United States v. Heilprin*, 910 F.2d 471, 474–75 n.7 (7th Cir. 1990) (court is "at all times perfectly free to disagree with the probation officer's position").

The probation officer's recommendation may be persuasive and even compelling on its merits. But there is no legal reason for requiring the court to give it any particular weight apart from its inherent persuasiveness. Defendants are not legally entitled to know probation officers' recommendations. See *Heilprin*, 910 F.2d at 474 (no constitutional or statutory right to be informed of a probation officer's sentencing recommendation); Fed. R. Crim. P. 32(e)(3) ("By local rule or by order in a case, the court may direct the probation officer not to disclose to anyone other than the court the officer's recommendation on the sentence."). The district judge here was free to disclose the recommendation, but that disclosure did not trigger a new procedural requirement that the judge discuss the recommendation on the record.

Stephens contends that this court overturned the *Heilprin* line of cases in *United States v. Petersen*, 711 F.3d 770, 778–79 (7th Cir. 2013), where in dicta we urged courts to consider releasing confidential sentencing recommendations to the parties. Different judges have different perspectives on the discretionary choice whether to disclose confidential recommendations. There are reasonable arguments on both sides of that question, and the better course may differ from case to case. But there is no *legal* conflict here. *Petersen* reiterated that a de-

fendant does not have a legal right to see the confidential recommendation, at least as long as the recommendation does not put new factual information before the court. *Id.* at 778. And *Petersen* reinforced that the choice about disclosing a recommendation is up to the judge. *Id.* at 779.[1]

Returning to this case, the district court did release the recommendation to the parties, and Stephens was able to comment on it. He did so, saying that the probation officer had considered a minimum sentence. But the officer increased the recommendation (though still below the range) because Stephens had committed new child pornography crimes after the first seizure. The district court did not commit a procedural error when it did not address the probation officer's recommendation when explaining Stephens's sentence.

B. *Addressing Arguments in Mitigation*

Stephens next argues that the district court ignored his primary mitigation arguments: his mental illnesses, his minimal risk of re-offending, and his policy disagreement with the child pornography sentencing enhancements. Resentencing may be required when the district court's discussion of a principal mitigation argument is "so cursory that we are unable to

---

[1] The qualification about not putting new factual information into the recommendation is critical. A defendant has a due process right not to be sentenced on the basis of incorrect factual information. See, e.g., *United States v. Tucker*, 404 U.S. 443, 447 (1972); *United States v. Miller*, 900 F.3d 509, 514 (7th Cir. 2018); *United States ex rel. Welch v. Lane*, 738 F.2d 863, 864–65 (7th Cir. 1984). A confidential recommendation should not be turned into a back-channel for unreliable information that the defendant never has a chance to address. Federal Rule of Criminal Procedure 32 is designed to ensure procedural fairness in sentencing, particularly in paragraphs (e) through (i), to prevent such errors.

discern the court's reasons for rejecting the argument." *United States v. Vidal*, 705 F.3d 742, 744 (7th Cir. 2013).

Before we address the argument, we repeat our advice that at the end of every sentencing hearing, the court should specifically ask whether it addressed sufficiently the defendant's main arguments in mitigation. See *United States v. Hancock*, 825 F.3d 340, 343–44 (7th Cir. 2016); *United States v. Donelli*, 747 F.3d 936, 941 (7th Cir. 2014); *United States v. Garcia-Segura*, 717 F.3d 566, 569 (7th Cir. 2013) (encouraging courts to ask "whether [defendants] are satisfied that the court has addressed their main arguments in mitigation" and if they assent, "a later challenge … would be considered waived"). This approach allows courts to correct possible procedural errors immediately, while their thinking is fresh, rather than wait for "correction after appellate review, a year or more of delay, and a new hearing after remand." See *United States v. Brown*, 932 F.3d 1011, 1020 (7th Cir. 2019), quoting *Donelli*, 747 F.3d at 941. We also encourage defense attorneys and prosecutors to speak up proactively if a district court overlooks a major argument. District judges rightly rely on advocates to raise and emphasize the points that warrant their attention.

As for Stephens's mitigating arguments, the district court did not designate them each for separate discussion, but the transcript does not leave us questioning whether the court considered them adequately. First, the court said that it reviewed the PSR and read the parties' submissions and supplemental reports, which is often enough to show that it considered the mitigation arguments. See *United States v. Graham*, 915 F.3d 456, 459 (7th Cir. 2019); *United States v. Ramirez-Gutierrez*, 503 F.3d 643, 646 (7th Cir. 2007). With respect to the

mental illnesses and recidivism risk, the court thoroughly addressed these while considering the factors under 18 U.S.C. § 3553(a).

Stephens maintains that the district court silently passed over his recidivism and diminished-capacity arguments supported by the report on his psychosexual evaluation. We read the record differently. The court concluded that Stephens's diminished capacity and risk of re-offending were *aggravating* factors, not mitigating factors. That signaled its unmistakable rejection of these contentions as mitigating. See *United States v. Wade*, 890 F.3d 629, 632 (7th Cir. 2018). While the court never explicitly mentioned Stephens's diagnoses, it concluded that imposing a below-guideline sentence was a "grave risk" based, in part, on Stephens's inability to understand the seriousness of his offense.

Instead of crediting the psychologist's finding that Stephens had a low risk of "sexually offending" as a pornography-only offender, the court looked at Stephens's recent history. The court emphasized that, "despite his statements and explanation in open court," Stephens's actions demonstrated that the initial seizure "had no deterrent effect whatsoever as [he] found the means to collect yet another 10,000 images." Although the district court only "implicit[ly] or imprecise[ly]" noted the psychologist's evaluation at the hearing, its discussion still shows that the court "considered the argument." See *United States v. Patel*, 921 F.3d 663, 670 (7th Cir. 2019), quoting *United States v. Tounisi*, 900 F.3d 982, 987 (7th Cir. 2018).

The district court was also not required to address Stephens's policy argument that the guideline enhancements resulted in an artificially high sentence for his no-contact child

pornography offense. First, he never mentioned his (or the probation officer's) policy view at the hearing. It was not a central argument. Second, a sentencing court may pass over generalized policy disagreements with the Guidelines. E.g., *United States v. Schmitz*, 717 F.3d 536, 541–42 (7th Cir. 2013). We have rejected appellate arguments based on a district court's failure to address policy disagreements with the child-pornography guidelines. E.g., *United States v. Grisanti*, 943 F.3d 1044, 1053–54 (7th Cir. 2019); *United States v. Oberg*, 877 F.3d 261, 264 (7th Cir. 2017); *United States v. Hancock*, 825 F.3d 340, 344–45 (7th Cir. 2016). Stephens did not object to any specific increase to his guideline range; he agreed to the calculations. The court explained why it was appropriate to impose a sentence within that applicable range: Stephens's offense went beyond "mere" child pornography because he collected a "staggering amount" of images depicting violent, traumatic, and sadistic abuse.

C.  *Section 3553(a)*

Finally, Stephens argues that the district court did not meaningfully analyze the 18 U.S.C. § 3553(a) sentencing factors. He contends that the court focused "solely" on the seriousness of his crime and did not inquire into his personal history and characteristics, including his upbringing, lack of criminal history, age, mental health diagnoses, and his prepayment of his large restitution obligation. At a sentencing, the judge must correctly calculate the range, address the parties' principal arguments, consider the statutory factors, and explain the sentence. See *Gall v. United States*, 552 U.S. 38, 51 (2007). But the court need not march through "every factor under § 3553(a) in a checklist manner;" only an "adequate

statement" of the applicable factors is needed. *United States v. Barr*, 960 F.3d 906, 914 (7th Cir. 2020).

The district court sufficiently analyzed the § 3553(a) factors that "determined the sentence" it imposed. See *United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005). The court expressly addressed the nature and seriousness of Stephens's offense, § 3553(a)(1) & (2)(A), the likelihood of recidivism, § 3553(a)(2)(C), and general deterrence, § 3553(a)(2)(B). It is not correct that the entire argument for affirming this sentence rests on the court "implicitly" addressing the factors. The court was not required to dwell on other factors that it did not find meaningful in this case. See *Barr*, 960 F.3d at 914. Stephens's insistence that the court was required to specifically mention his "history and characteristics" echoes the oft-rejected argument that the court must tick off each factor instead of drawing attention to those most important for the specific case. See *id*.

Further, while Stephens's written submission explored his personal history and characteristics at great length, he barely touched on them at the sentencing hearing. Although we have not said that only an oral presentation triggers a district court's obligation to address an argument, it is hard to fault the court for not discussing in the hearing a topic the defendant scarcely mentioned in that hearing. See *Grisanti*, 943 F.3d at 1052 ("A party may not 'invite' error."). For example, Stephens discusses on appeal the impact of his mother's suicide when he was 16 and other aspects of his background. At the hearing, his attorney said that his upbringing was "not horrible" but "possibly not the best." His attorney also briefly noted Stephens's mental disorders and his ability to admit,

albeit belatedly, that he "has sexual feelings for female children." From there, however, his attorney emphasized that the "basic thing" that should drive the sentence was the "likelihood of recidivism" and said that Stephens posed a lower risk based on recent behavioral treatment and time to "realize the magnitude and seriousness" of what he did. The attorney admitted that Stephens would submit to a lifetime of supervised release to "make sure that there was someone to check on him, that somebody was monitoring him." In the face of this presentation and the overall facts of the case, it is not hard to see why the district court focused primarily on the nature of the crime and the risk of recidivism.

Stephens is correct that the district court did not specifically discuss much of what he argued in writing before the hearing. But the procedural protections are designed "to allow for meaningful appellate review and to promote the perception of fair sentencing." *Gall*, 552 U.S. at 50. Here, the record shows clearly why the court imposed a within-guideline sentence. Stephens collected a vast quantity of images, some portraying sadistic abuse. He continued to amass them despite the previous seizure. His inability or unwillingness to understand his conduct and how it affected the victims made it more likely that he would reoffend. Because the district court expressed a clear view on Stephens's rehabilitative potential, we have no reason to seek further explanation. As we said in *United States v. Castaldi*, 743 F.3d 589, 595 (7th Cir. 2014), "the district judge made his thinking clear enough."

AFFIRMED.